IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Kevin Boulais, ) | |
| ) | Civil Action No. 8:07-446-GRA-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| United States, Williamsburg ) | |
| Regional Hospital, Victor ) | |
| Loranth, M.D., and Gilbertas ) | |
| Rimkus, M,D., ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a federal prisoner represented by counsel, brought this action alleging claims pursuant to 42 U.S.C. § 1983, the Federal Torts Claim Act ("FTCA"), and common law state negligence claims. This matter is before the court on the defendants Williamsburg Regional Hospital ("Hosptial") and Dr. Gilbertas Rimkus' motions to dismiss or, alternatively, for summary judgment. (Docket Entry # 19 and 20) and the defendants the United States and Dr. Victor Loranth's motion for summary judgment. (Docket Entry # 32.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on February 13, 2007, seeking damages for alleged civil rights violations and negligence. On June 11, 2007, the defendants Hospital and Dr. Rimkus filed motions to dismiss or, alternatively, for summary judgment.[1] On August 14, 2007, the plaintiff filed a response opposing these defendants' motions. On August 14, 2007, the defendants the United States and Dr. Loranth also filed a motion for summary judgment. On August 31, 2007, the plaintiff filed a response opposing this motion.

## **FACTS PRESENTED**

The plaintiff is a federal inmate currently incarcerated at the Federal Correctional Institution in Butner, North Carolina ("FCI-Butner"). (Compl. ¶ 1.) On January 10, 2005, while incarcerated at Federal Correctional Institution in Beaumont, Texas ("FCI-Beaumont"), the plaintiff noticed a lump in his throat. The plaintiff was examined by medical personnel and prescribed antibiotics for approximately two months. (*Id.* ¶ 9.) On February 28, 2005, the lump was noted in the plaintiff's medical records and it was suggested the area be kept under observation. (*Id.* ¶ 10.) From March 3-25, 2005, the plaintiff was housed at the Federal Transfer Center in Oklahoma City ("FTC-Oklahoma City") where he did not receive any medical care. (*Id.* ¶ 11.) From March 29 -April 28, 2005, the plaintiff was housed at the United States Prison in Atlanta, Georgia ("USP-Atlanta") where he received no medical care. (*Id*. ¶ 12.)

---

[1] Because the court considered, matters outside of the complaint, the defendants' motion has been treated as one for summary judgment. Fed.R.Civ.P. 12(b)("If, on a motion asserting the defense numbered (6) to dismiss . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . .").

On April 28, 2005, the plaintiff was transferred to the Federal Correction Institution in Williamsburg, South Carolina ("FCI-Williamsburg"). (Compl. ¶ 13.)  On May 31, 2005, the plaintiff was seen by Dr. Loranth who recommended that the plaintiff be transferred to defendant Hospital for a biopsy/possible excision. (Pl.'s Mem. Opp. Summ. J. Mot. at 2.) On August 1, 2005, Dr. Rimkus performed a biopsy of the lump. (Compl. ¶ 15.) The plaintiff received no further medical care at the Hospital or FCI-Williamsburg. (Pl.'s Mem. Opp. Summ. J. Mot. at 2.)

On August 9, 2005, Dr. Rimkus relayed the biopsy results, which showed the plaintiff had cancer, to Dr. Loranth. On September 1, 2005, the plaintiff was transferred to Federal Medical Center in Butner, North Carolina ("FMC-Butner). (Compl. ¶ 17.) After arriving at FMC-Butner, the plaintiff received radiation and chemotherapy and in November of 2005 the lump was surgically removed. (*Id.* 17-18). Currently, the plaintiff's cancer is in remission.

On March 27, 2006, the plaintiff filed a Form 95 with the Bureau of Prisons ("BOP") alleging that BOP employees and contract employees at FCI-Beaumont and FCI-Williamsburg had failed to properly diagnose his cancer and provide treatment and that he suffered injuries as a result. (Docket # 32- Defs.' Mem. Supp. Summ. J. Mot. Ex. 7.) In the claim, the plaintiff alleged a sum certain of $1.5 million in damages. (*Id.*)  On June 19, 2006, the United States denied the plaintiff's Form 95. (*Id.* Ex. 8.) The plaintiff filed for reconsideration on July 17, 2006. (*Id.* Ex. 9.) On August 25, 2006, the plaintiff was denied

3

reconsideration of the denial of his claim. (Docket Entry # 32- Defs.' Mem. Supp. Summ. J. Mot. Ex. 10.)

On January 2, 2007, counsel for the plaintiff filed an Amended Form 95 with the BOP in which he alleged that the BOP employees and contract employees at FTC - Oklahoma City, USP-Atlanta, and FMC-Butner had also misdiagnosed the cancer. The plaintiff alleged $10 million in damages. (Docket # 32- Defs.' Mem. Supp. Summ. J. Mot. Ex. 12.) On January 10, 2007, the BOP informed the plaintiff that his Amended Form 95 was not accepted on the grounds that it was an improper amendment of the plaintiff's first Form 95 and it was filed after the agency's determination on the first Form 95. (*Id.* Exs. 13 & 14.) The plaintiff filed this action on February 13, 2007.

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of it existence or nonexistence would affect the disposition of

the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## **DISCUSSION**

In his response to the defendant Hospital and Dr. Rimkus' motions for summary judgment, the plaintiff agreed "that there is no evidence that these defendants acted under

color of state law and, therefore, the plaintiff consents to judgment with respect to all claims asserted against either defendant under 42 U.S.C. § 1983." (Docket Entry # 31 - Pl.'s Mem. Opp. Summ. J. Mot. n. 1.)   Further, in his response to the defendants the United States and Dr. Loranth's summary judgment motion, the plaintiff has agreed that he "is not pursuing any claim against Dr. Loranth nor any claim against the United States under 42 U.S.C. § 1983, or otherwise, for violation of constitutional rights."  (Docket Entry # 35 - Pl.'s Mem. Opp. Summ. J. Mot. n. 2.)  Accordingly, the court need not address any alleged § 1983 claims against any defendants nor any claims against Dr. Loranth.  This leaves the plaintiff's FTCA claims against the United States and state law negligence claims against the Hospital and Dr. Rimkus.

**FTCA claims**

The plaintiff alleges negligence claims pursuant to the FTCA.  The defendant United States has moved for summary judgment.

The FTCA provides a limited waiver of sovereign immunity that enables parties that are injured by an agent of the United States to obtain relief.  The FTCA requires that a claim be presented to the appropriate agency within two years after the claim accrues. 28 U.S.C. § 2401(b).  The statute of limitations set out in section 2401(b) of the FTCA has been construed narrowly to require both 1) that an administrative claim be presented to the appropriate agency within two years of accrual of the claim and 2) that a complaint be filed in a district court within six months after final notice of denial from the agency. The

requirement of filing an administrative claim is jurisdictional and cannot be waived. *See Ahmed v. United States, et. al*, 30 F.3d 514, 516 (4th Cir.1994) (*citing Henderson v. United States*, 785 F.2d 121, 123 (4th Cir.1986)).  A claim is presented "when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for monetary damages in a sum certain for injury to or loss of property, personal injury, or death." *Id*. (citing 28 C.F.R. § 14.29(a)).  Further, pursuant to the FTCA, an administrative claim brought under the FTCA may be amended by the claimant at any time prior to final agency action.  28 C.F.R. § 14.2(c).

As an initial matter, the United States contends that the court does not have jurisdiction over any of the plaintiff's claims alleging negligence at FTC -Oklahoma City, and USP-Atlanta because these claims were not included in the first Form 95 the plaintiff filed with the United States agency, the BOP.  The plaintiff argues that the FTCA gave him two years to file a Form 95 dating from the accrual of his cause of action and both Form 95s were filed well within this period.  The United States argues that the second Form 95 was an amendment of the first Form 95 and that 28 C.F.R. 14.2(c) allows amendments only if filed prior to final agency action. The court agrees.

First, the plaintiff's own counsel specifically filed the second Form 95 as an "amended" Form 95.  (Docket # 32- Defs.' Mem. Supp. Summ. J. Mot. Exs.11 &12.)   The plaintiff now argues that this characterization by counsel is not controlling and that the second Form 95 should be treated as a new and separate Form 95 specifying new

7

incidents rather than as an amendment of the first one. However, the court notes that not only is the second Form 95 labeled as an "Amended Form 95," but it also refers to the original Form 95 by number and includes the negligence claims which are alleged to have occurred at Beaumont and FCI- Williamsburg which would be unnecessary if the second Form 95 was, as the plaintiff now claims, a new *and separate* claim. (*Id.*)

In any event, the BOP unequivocally treated the second Form 95 as an attempt by the plaintiff to amend his first Form 95 and refused to accept the amended Form 95. (*Id.* Exs. 13 &14.) If the plaintiff believed this was in error, he should have attempted to file a new Form 95 at that time rather than simply file the instant action. Clearly, the plaintiff's claims in this action are limited to those which are alleged to have occurred at FCI-Williamsburg and FCI-Beaumont as these were the only claims which were presented to the United States on a properly filed Form 95.

Turning to the merits of the plaintiff's claims, in the first Form 95 the plaintiff alleged that medical staff at FCI- Beaumont failed to correctly diagnosis his medical condition and medical staff at FCI-Williamsburg failed to follow the doctor's order to remove the tumor from his neck. (Docket # 32- Defs.' Mem. Supp. Summ. J. Mot. Ex. 7.) In the denial letter, the BOP informed the plaintiff that the medical care provided to inmates at FCI-Beaumont was by contract medical staff. (*Id.* Ex. 8.) The plaintiff was informed that the government was not responsible for the actions of contract medical staff and he was

provided with the name and address of the contract medical provider who was responsible for medical care for inmates at FCC-Beaumont. (*Id.*)

There is no dispute that pursuant to 28 U.S.C. § 2671, the government is not liable for the actions or omissions of contractors. However, the plaintiff argues that because both "the plaintiff and Dr. Singer have stated that federal employees treated the plaintiff at FCC-Beaumont as well as the private contractors," there is a question of fact on this issue. (Docket Entry # 35 - Pl.'s Mem. Opp. Summ. J. Mot. at 8.) First, after reviewing Dr. Singer's affidavits, the court does not see any such statement. Further, and more importantly, Dr. Singer is only offering his expert testimony on the standard of care in this case. He is not a fact witness. As for the plaintiff's statement, in his affidavit, he states only that he remembers being treated by medical personnel in naval uniforms at FCC-Beaumont. (Docket Entry # 41- Pl.'s Aff. ¶ 4.) Without more, the plaintiff's conclusory and self-serving allegation is not sufficient to survive to create an issue of fact. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

Additionally, David Miller, the Public Health Services Specialist at FCC-Beaumont, states in his affidavit that "[a]ll medical care at FCC-Beaumont is provided under a managed health care contract by [University of Texas Medical Branch] staff." (Docket Entry # 44 - David Miller Aff. ¶ 2.) Miller also states that while he wore a uniform, he was the only Public Health Service Officer at Beaumont when the plaintiff was there and he did not treat the plaintiff. (*Id.* ¶¶ 3-4.) Without any competent evidence to dispute Miller's

statements that the plaintiff was not treated by federal employees, the only claims properly before the court are those alleged to have taken place at FCI-Williamsburg.

On April 28, 2005, the plaintiff arrived at FCI-Williamsburg. On May 2, 2005, the plaintiff was seen by Dr. Loranth for hypertension. (Docket Entry # 32 - Pl.'s Med. Records -Defs.' Mem. Supp. Summ. J. Mot. Ex. 16 at 7.) During this visit, the plaintiff noted that had a node in his neck, but that it had not grown since February 2005. (*Id.*) Dr. Loranth noted the plaintiff had a mobile node about ½ by ½ centimeter that had been present since Fall 2004. (*Id.*) Dr. Loranth noted that, although it was not enlarging, the plaintiff needed to see a surgeon regarding the neck node. (*Id.* at 7-8*.*) Dr. Loranth requested a surgical consultation for the plaintiff. (*Id.*)

On May 13, 2005, the General Surgeon examined the plaintiff who recommended a biopsy of the node. (Docket Entry # 32 - Pl.'s Med. Records - Defs.' Mem. Supp. Summ. J. Mot. Ex. 16 at 9.) On May 31, 2005, Dr. Loranth made arrangements for a surgical consultation for the plaintiff to have a biopsy and/or possible excision of the neck node. (*Id.* at 10.) On August 1, 2005, the plaintiff was taken to the defendant Hospital to have an incisional biopsy of the left neck node. (*Id.* at 24-26.). On August 9, 2005, Dr. Loranth spoke to Dr. Rimkus about the pathology report. (*Id*. at 31.) Dr. Rimkus faxed the report to Dr. Loranth. (*Id.* at 33.) The pathology report indicated that the mass was squamous cell carcinoma. (*Id.*)

On May 2, 2005, the first time the medical personnel became aware of the lump in the plaintiff's, the medical staff began to treat the plaintiff as evidenced by the fact that he was seen by a private surgeon, Dr. Rimkus, for a consultation eleven days later on May 13th. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 16 at 6-9.) Thereafter, the plaintiff was scheduled for a biopsy with Dr. Rimkus and the biopsy was performed on August 1, 2005. Although it appears that there may have been an unexplained delay in between the time when the consultation took place in mid-May and the biopsy on August 1st, there is no evidence that this delay in treatment by FCI-Williamsburg proximately caused the plaintiff any injury.[2] Further, once the plaintiff's diagnosis of cancer was relayed to Dr. Loranth on August 9th, a day later he requested an emergency medical transfer and 21 days later, the plaintiff was transferred to Butner.

There is no evidence that the plaintiff has suffered pain, anxiety, higher chance of recurrence, and higher mortality rate based on any alleged delay in diagnosis and treatment between the end of April 2005, when the plaintiff first arrived at FCI-Williamsburg, and September 1, 2005, when he was transferred to FMC-Butner where the plaintiff notes he received the appropriate care. Accordingly, the defendant United States should be granted summary judgment.

---

[2]The United States suggests that the surgeon's schedule may have caused the delay (Docket Entry # 32 -Defs.' Mem. Supp. Summ. J. Mot. at 31) while Dr. Rimkus contends that FCI-Williamsburg was in control of the scheduling and he had several dates available prior to August 1, 2005, when he could have performed the biopsy. In fact, Dr. Rimkus state that the plaintiff was actually scheduled for surgery on June 20 and July 6, 2005, but that he was a "no show." (Docket Entry # 33 - Defs.' Reply Mem. at 3.) However, as discussed herein, the plaintiff has failed to show that any delay in having the biopsy caused his alleged injuries.

11

**State Law Claims**

Through the exercise of supplemental jurisdiction, federal courts may hear and decide state law claims in conjunction with federal law claims. *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998). The plaintiff's state claims are cognizable in this Court under the diversity statute if that statute's requirements are satisfied. *Cianbro Corp. v. Jeffcoat & Martin*, 804 F.Supp. 784, 788-91 (D.S.C.1992). The diversity statute requires complete diversity of parties and an amount in controversy in excess of seventy-five thousand dollars ($75,000). *See* 28 U.S.C. § 1332(a). It appears that there is complete diversity as the plaintiff is considered a resident of New Hampshire and the defendants of South Carolina and further the amount in controversy exceeds $75,000.

In South Carolina, a plaintiff alleging medical malpractice must provide evidence showing (1) the generally recognized and accepted practices and procedures that would be followed by average, competent practitioners in the defendants' field of medicine under the same or similar circumstances, and (2) that the defendants departed from the recognized and generally accepted standards. *Pederson v. Gould*, 341 S.E.2d 633, 634 (S.C. 1986); *Cox v. Lund*, 334 S.E.2d 116, 118 (S.C. 1985). Additionally, the plaintiff must show that the defendant's departure from such generally recognized practices and procedures was the proximate cause of the plaintiff's alleged injuries and damages. *Green v. Lilliewood*, 249 S.E.2d 910, 913 (S.C. 1978). The plaintiff must provide expert testimony to establish both the required standard of care and that the defendants' failure to conform

to that standard, unless the subject matter lies within the ambit of common knowledge so that no special learning is required to evaluate the conduct of the defendants. *Pederson*, 341 S.E.2d at 634. "When one relies solely upon the opinion of medical experts to establish a causal connection between the alleged negligence and the injury, the experts must, with reasonable certainty, state that in their professional opinion the injuries complained of most probably resulted from the Defendant's negligence." *Id*.

The plaintiff's expert medical witness, Dr. Barry Singer, has opined that the medical staff and physicians who were involved in the plaintiff's care negligently deviated from the applicable standard of care and that these deviations proximately caused the plaintiff to suffer various injuries. Dr. Singer states the standard of care requires prompt diagnosis, immediate treatment, and the proper removal/biopsy procedure. (Singer Supp. Aff. ¶ 5.) Specifically, the plaintiff contends that Dr. Rimkus negligently deviated from the standard of care by allowing the lump to grow from August 1, 2005, till October 2005 and in allowing the biopsy wound to remain open. (Pl.'s Mem. Opp. Def.'s Summ J. Mot. at 3.)

As for proximate cause, Dr. Singer then states that the defendants'

> "violations of the standard of care have proximately caused
> injuries and damages to the plaintiff which may be summarized
> as:

> a. The cancerous mass grew in stage from January 2005 until October 2005, when it was removed the mass was a state 4A.

> b. This delay in diagnosis and treatment caused a high likelihood of recurrence, a reduction in overall health, and a decline in longevity.

(Singer's Supp. Aff. ¶ 7.)

13

It is undisputed that Dr. Rimkus biopsied the mass on the plaintiff's jaw on August 1, 2005. It is also undisputed that on August 9, 2005, after receiving the pathology report, Dr. Rimkus immediately called Dr. Laranth with the results and that was the extent of Dr. Rimkus' treatment of the plaintiff. Dr. Laranth then arranged for an emergency transfer of the plaintiff based upon his medical condition. Further, the plaintiff was transferred to Butner on September 1, 2005, where he received the appropriate medical treatment for his cancer. (Singer Supp. Aff. ¶ 6(c)("the plaintiff was transferred to Butner, NC in September 2005 where he did start to receive the appropriate medical treatment including the removal of the mass.")

As noted above, the plaintiff specifically contends that Dr. Rimkus negligently deviated from the standard of care by allowing the lump to grow from August 1, 2005, till October 2005 and in allowing the biopsy wound to remain open. (Pl.'s Mem. Opp. Summ. J. Mot. at 5.) However, there is no evidence to support the plaintiff's allegations. The Operative Report supports Dr. Rimkus' statements that the biopsy wound was closed and did not remain open: "Capsule of this mass was closed with interrupted 3.0 Polysorb stitches. Platysma muscle was closed with interrupted 3.0 Polysorb stitches and skin was closed with running subcuticular 4.0 Biosyn stitch." (Def.'s Mem. Supp. Summ. J. Mot. Ex. E.) Additionally, without a pathology report, Dr. Rimkus could not be sure what the mass was when he biopsied it. If the mass was lymphoma, it would have not been excised but instead treated with chemotherapy and radiation. (Def.'s Reply Mem. Ex. A).

Furthermore, the record is clear that Dr. Rimkus' involvement in the plaintiff's treatment ended August 9, 2005, and the plaintiff was transferred from FCI-Williamsburg

14

to FMC-Butner on September 1, 2005. Certainly there is no factual basis for holding Dr. Rimkus liable once the plaintiff was transferred to Butner and, more importantly, began receiving the appropriate medical treatment.[3]

Finally, there is no evidence that the plaintiff has suffered pain, anxiety, higher chance of recurrence, and higher mortality rate based on the alleged delay in treatment from August 1, 2005, until September 1, 2005, or even giving the plaintiff the benefit of the doubt until the end of October 2005. There is no documentation to support the plaintiff's allegation that he has a higher chance of recurrence, higher mortality rate based on the delay in diagnosis, or increased injury due to the severity of the cancer that grew between August 1, 2005, and October 2005 due to any alleged negligent acts of Dr. Rimkus. Accordingly, Dr. Rimkus should be granted summary judgment on the plaintiff's state law negligence claim.

As for the defendant Hospital, it has been sued solely as the employer of Dr. Rimkus and the plaintiff has not alleged any independent acts of negligence against the Hospital. Further, the plaintiff's expert has not raised any independent issues of negligence against the Hospital. Accordingly, since summary judgment is appropriate for Dr. Rimkus, likewise the Hospital should also be granted summary judgment.

## **CONCLUSION**

---

[3]The plaintiff contends the defendants were liable throughout September and October 2005 when the plaintiff was being treated at Butner. However, Dr. Singer specifically states that "the plaintiff was transferred to Butner, NC in September 2005 where he did start to receive the appropriate medical treatment including the removal of the mass." (Singer Supp. Aff. ¶ 6(c).) Any delay in treatment ended once the plaintiff began receiving the appropriate treatment in Butner in September.

Wherefore, based upon the foregoing, it is RECOMMENDED that the Defendants Williamsburg Hospital and Dr. Rimkus' Motions for Summary Judgment (# 19, 20) and the Defendants the United States and Dr. Loranth's Motion for Summary Judgment (#32) be GRANTED and the Plaintiff's complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

_Bruce H. Hendricks_
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

October 9, 2007
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).